IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RIVERFRONT HOTEL LLC,<br>ONIX RIVERFRONT LLC,<br>BFC DEVELOPMENT LLC, and<br>BIGGER FISH LLC, | §<br>§<br>§<br>§<br>§ | No. 440, 2018 |
| Appellants Below,<br>Appellants, | §<br>§<br>§ | Court Below—Superior Court<br>of the State of Delaware |
| v. | §<br>§<br>§ | |
| BOARD OF ADJUSTMENT OF<br>THE CITY OF WILMINGTON,<br>RIVERFRONT DEVELOPMENT<br>CORPORATION OF DELAWARE,<br>BPG WILMINGTON RIVERFRONT<br>HOTEL XXXIV LLC, and BPG<br>WILMINGTON HOTEL XXXIV<br>LLC, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Appellees Below,<br>Appellees. | §<br>§ | |

Submitted: March 15, 2019
Decided: April 29, 2019

Before **VALIHURA**, **SEITZ**, and **TRAYNOR**, Justices.

# **O R D E R**

This 29th day of April 2019, after careful consideration of the parties' briefs

and the record on appeal, it appears to the Court that:[1]

---

[1] Because the record is lacking in factual background, we have taken judicial notice of a few historical matters that did not impact our disposition but are nevertheless helpful to a practical understanding of the case. *See* D.R.E. 201.

(1)     In the spring of 2014, Buccini/Pollin, a land developer, opened the 180-room Wilmington Westin, which was the first hotel built in Wilmington in decades and was part of a revitalization plan for the Wilmington riverfront.  With the success of the Westin, which often is fully booked, Buccini/Pollin sought to build two more hotels nearby.

(2)     The Riverfront Development Corporation, an entity established by the General Assembly in 1995, owned the lot that Buccini/Pollin sought to build on. Buccini/Pollin acquired the lot and planned to divide it into three parcels to contain both hotels and a parking garage.

(3)     Meanwhile, another developer group led by Big Fish Restaurant Group and Onix Group ("Big Fish") also planned to build a hotel.  It put together a strategy to build a riverfront Hyatt attached to a Big Fish restaurant that had opened in July 2009.   Big Fish's Hyatt would be two lots down the Christina River from Buccini/Pollin's proposed hotels.

(4)     To develop its new lot, Buccini/Pollin sought two variances from the Wilmington Board of Adjustment ("the Board").  First, it sought a variance for the first hotel to be built on the lot, a Homewood Suites, to exceed the floor-area ratio[2]

---

[2] The floor-area ratio is the ratio of floor space to lot size.  Floor-area regulations are, in effect, density regulations.

of 2:1 that would ordinarily apply.[3] Second, Buccini/Pollin wanted a variance to build a temporary parking lot (that would be later replaced by the parking garage) without landscaping islands in the lot. The variances do not apply to Buccini/Pollin's second hotel on the lot.[4]

(5) The Board held a hearing on these variances at which Big Fish argued against the variances. Despite Big Fish's opposition, the Board granted both variances but required Buccini/Pollin to complete the permanent parking garage within three years.

(6) Big Fish appealed the Board's decision to the Superior Court on the basis that it was not supported by substantial evidence and did not properly apply the test for area variances this Court had laid out in *Board of Adjustment v. Kwik-Check Realty, Inc*.[5] The Superior Court affirmed the Board's decision.[6] Big Fish now appeals to this Court.

(7) After the parties filed their briefs, we requested supplemental submissions on the issues of mootness and standing. Our interest in the possibility that some or all of the issues before us might be moot was piqued by Big Fish's

---

[3] Buccini/Pollin appeared to have planned to subdivide the lot into three parcels such that the Homewood Suites would exceed the floor-area ratio requirement that would apply. But it appears that no three-parcel subdivision has occurred. Under the parcel division currently recorded, the Homewood Suites would not currently exceed the floor-area ratio requirement even absent the variance.

[4] Answering Br. 6 ("the second phase, which was not the subject of the [variance a]pplication . . .").

[5] 389 A.2d 1289, 1291 (Del. 1978).

[6] Order, *Riverfront Hotel v. Board of Adjustment*, N17A-11-004 (Del. Super. Jul. 31, 2018).

3

assertions in its opening brief that "[t]he hotel which was represented as needing a variance is now being built on the larger of the two parcels, and no variance is needed,…[and] [a]ccordingly, as a practical matter, [Buccini/Pollin] will not be injured by the reversal of the Board's decision."[7]  Having received the parties' supplemental submissions, we now VACATE the Superior Court's decision as to the floor-area ratio variance as moot and AFFIRM the Superior Court's decision as to the landscape variance.

*　*　*

(8)    "The law is well settled that our courts will not lend themselves to decide cases which have become moot, or to render advisory opinions."[8]  "Delaware courts do not address disagreements that have no significant current impact."[9]

(9)    We find that the floor-area ratio variance appeal is moot because we see no reason to think invalidating that variance would do anything to stop Buccini/Pollin's Homewood Suites from being built as planned.[10]

(10)   As mentioned, Big Fish appears to agree, contending in its opening brief Buccini/Pollin did not need the variance for the project it actually undertook.

---

[7] Opening Br. 11.

[8] *Stroud v. Milliken Enterprises, Inc.*, 552 A.2d 476, 480 (Del. 1989) (internal quotations omitted).

[9] *Crescent/Mach I Partners, L.P. v. Dr Pepper Bottling Co. of Texas*, 962 A.2d 205, 209 (Del. 2008).

[10] *See supra* note 3.

4

Big Fish, though contesting the notion that this development moots the dispute before us, reiterated in its supplemental submission that

> [t]he variance at issue was not needed to permit construction of the 125-room hotel that [Buccini/Pollin is] currently constructing, as [Buccini/Pollin] removed a lot line to make the property only two sublots instead of three. The fact that 'Buccini/Pollin's] property can readily, without any variance, serve as the site of a single economically feasible hotel with surface parking, as is now being constructed, contradicts [Buccini/Pollin's] argument of an "exceptional practical difficulty," and obviates a need for the variance.[11]

(11)   That seems like the textbook definition of mootness to us.

(12)   In its supplemental memorandum, Big Fish argues against mootness by presenting the specter of a hypothetical future illegal subdivision by Buccini/Pollin.[12]  In other words, Big Fish argues against mootness by pointing to a speculative and unripe claim.[13]  We decline to take Big Fish's bait.

(13)   Big Fish also attempts to invoke the "capable of repetition, yet evading review"[14] exception to mootness.  But that exception is not applicable here.  There

---

[11] Supp. Mem. 2–3 (footnote omitted).

[12] *Id*. at 3 ("Once the 125-room hotel is completed, the variance permits Appellees to resubdivide its property into three parcels, the smallest of which will serve as an undersized site for the 125-room hotel, and the balance of Appellee's two-acre property will serve as the site of a second, non-Code-compliant hotel and parking garage.").

[13] *Texas v. United States*, 523 U.S. 296 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U. S. 568, 580-581 (1985)) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotations omitted)).

[14] *Southern Pacific Terminal Co. v. I.C.C.*, 219 U.S. 498, 515 (1911).

is no reason why this mootness issue would repeat itself if and when there is a justiciable controversy.

(14) For their part, the Board and Buccini/Pollin, though not contesting that Buccini/Pollin has recorded a subdivision plan dividing the one lot into two lots, rather than the three lots contemplated when it requested the variance, appear to be concerned that a mootness finding may render the variances invalid. We disagree. These variances are presumptively valid in the absence of a judicial determination otherwise, and a determination of mootness is not a determination of invalidity. A mootness determination only means that there is no live controversy before us.

(15) But the issue of the parking lot landscaping variance is not (yet) moot. At the Board's September 2017 hearing, Buccini/Pollin testified that the permanent garage could be completed in 29 months. The garage has not been completed. Accordingly, if we were to vacate the landscaping variance, Buccini/Pollin may yet have to place landscaping islands in its temporary parking lot.

(16) We instead find that the temporary nature of the parking lot and the temporal limitations and requirements within the Board's decision justify the variance.

\* \* \*

6

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is VACATED as to the floor-area ratio variance and AFFIRMED as to the landscape variance.

BY THE COURT:

/s/ Gary F. Traynor
Justice